**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **JUSTIN TROUARD**, *et al.* * | |
| Plaintiffs, * | |
| v. * | Case No.: PWG-14-1703 |
| * | |
| **DICKEY'S BARBECUE** | |
| **RESTAURANTS, INC.,** * | |
| Defendant. * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| **CHORLEY ENTERPRISES INC.,** *et al.*, * | |
| Plaintiffs, * | |
| v. * | Case No.: GLR-14-1650 |
| * | |
| **DICKEY'S BARBECUE** | |
| **RESTAURANTS, INC.,** * | |
| Defendant. * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Justin Trouard and Jessica Chelton (the "Trouard Plaintiffs") entered into a franchise agreement ("Franchise Agreement") with Defendant Dickey's Barbecue Restaurants, Inc. ("Dickey's"); Plaintiffs Chorley Enterprises, Inc., Matthew Chorley and Carla Chorley (the "Chorley Plaintiffs") entered into a similar agreement with Dickey's.[1]  Plaintiffs lost money

---

[1] References to "Plaintiffs" include both the Trouard Plaintiffs and the Chorley Plaintiffs. Because the material terms are identical, the term "Franchise Agreement" will refer to the Chorley Plaintiffs' Franchise Agreement, as well as the Trouard Plaintiffs' Franchise Agreement, and the term "Arbitration Clause" refers to the Arbitration Clause that appears in both Franchise Agreements.  The Chorley Plaintiffs also entered into a development agreement ("Development Agreement") with Dickey's, under which they planned to open a second restaurant; the Development Agreement contained an identical Arbitration Clause.

trying to run their restaurants. Believing that Dickey's, along with Defendants Roland Dickey, Jr., and Jerrel Denton, Director of Business Development for Dickey's, violated the Maryland Franchise Registration and Disclosure Law, Md. Code Ann., Bus. Reg. § 14-201 *et seq.* ("Maryland Franchise Law"), the Trouard Plaintiffs and the Chorley Plaintiffs each sought mediation. When Defendants responded with claims of breach of contract and fraud and pursued arbitration instead of mediation, the Trouard Plaintiffs and the Chorley Plaintiffs each filed suit in this Court against Defendants, alleging fraud and violations of the Maryland Franchise Law, and seeking declaratory judgments and injunctive relief from the pending arbitration. In Plaintiffs' view, the arbitration clause of the Franchise Agreement is unenforceable under the Maryland Franchise Law.

On August 5, 2015, in accordance with the Fourth Circuit opinion issued that day, I ordered the parties to proceed to arbitration of the common law claims, and I directed them to brief the issue of whether the Maryland Franchise Law claims, which remain in this Court, should be stayed pending the resolution of the arbitration proceedings. The matter is now ripe for resolution. *See* ECF Nos. 64, 65, 66.[2] A hearing is not necessary. *See* Loc. R. 105.6. Because the arbitrator's decision may preclude the need for litigation or inform the Court's analysis of the issues, I will stay the claims in this Court.

---

[2] References to ECF numbers are in *Trouard v. Dickey's*, PWG-14-1703. Defendants requested leave to file a response to Plaintiffs' Memorandum, which Plaintiffs filed simultaneously with Defendants' Memorandum. Request & Response, ECF No. 66. Plaintiffs did not object, and Defendants' response is accepted as filed. However, the concerns raised in the response are unwarranted. Defendants are concerned that Plaintiffs seek to stay arbitration while the statutory claims proceed. Request & Response 1. Although Plaintiffs suggest that Defendants could "agree[] to continue the stay of the arbitrations pending a decision by this Court," Pls.' Mem. 5 n.2, Plaintiffs do not seek a court order staying arbitration, and I will not grant such relief.

**Standard of Review**

When some but not all claims before a court are subject to arbitration, "the decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket." *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 97 (4th Cir. 1996) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983); *Summer Rain v. Donning Co./Publishers, Inc.*, 964 F.2d 1455, 1461 (4th Cir. 1992)). The Court considers "[e]conomy of time and effort for the court, counsel, and litigants" and "'weigh[s] competing interests and maintain an even balance.'" *Elite Const. Team, Inc. v. Wal-Mart Stores, Inc.*, No. JKB-14-2358, 2015 WL 925927, at *3 (D. Md. Mar. 2, 2015) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936); other citations omitted). Stated differently, the Court considers "'(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party.'" *Id.* (quoting *Davis v. Biomet Orthopedics, LLC* Civ. No. JKB-12-3738, 2013 WL 682906 (D. Md. Feb.22, 2013) (citations and internal quotation marks omitted)). "A party seeking a stay must demonstrate a pressing need for one, and that the need for a stay outweighs any possible harm to the nonmovant." *Id.*

If "arbitration is likely to settle questions of fact pertinent to nonarbitrable claims, 'considerations of judicial economy and avoidance of confusion and possible inconsistent results ... militate in favor of staying the entire action.'" *Am. Heart Disease Prevention Found., Inc. v. Hughey*, 106 F.3d 389 (Table), 2007 WL 42714, at *6 (4th Cir. 1997) (quoting *Am. Home Assur. Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 964 (4th Cir. 1980)). For example, in *American Home Assurance*, in which claims brought in a third-party action were subject to arbitration and stayed pending the outcome of that arbitration, the Fourth Circuit concluded that

"all litigation should be stayed pending the arbitration proceedings," because the actions shared questions of fact that the arbitration likely would resolve. 629 F.2d at 964.

### Parties' Arguments

Plaintiffs oppose a stay, while Defendants favor one. The crux of Plaintiff's argument against staying the case is the possibility of inconsistent verdicts, with the Court's verdict potentially "eliminat[ing] the legal basis for Dickey's arbitrable contract claims." Pls.' Mem. 3. According to Plaintiffs, this Court could find that Dickey's violated the Maryland Franchise Act, such that the Franchise Agreement *is not* valid and enforceable, and the arbitrator could find that Plaintiffs breached the Franchise Agreement, which necessarily includes a finding that the Franchise Agreement *is* valid and enforceable. *Id.* at 4. Plaintiffs assert that, because "[t]he Fourth Circuit held that the Franchise Agreements expressly excluded the Franchise Act claims from the scope of arbitration," the arbitrator cannot decide "whether Dickey's complied with the Act in connection with selling the franchises." *Id.* Consequently, in their view, "any decision by the arbitrator regarding the existence of a valid and enforceable contract is necessarily provisional and advisory: a finding that a Franchisee breached the Franchise Agreement is valid only if this Court subsequently rules against the Franchisees on their claims under the Act." *Id.*

Plaintiffs also argue that Dickey's "cannot reasonably claim any prejudice" if the Court does not stay the matter, whereas a stay will prejudice Plaintiffs because they will "hav[e] to defend prematurely against claims that they believe will ultimately be rendered moot as a result of this litigation." *Id.* at 5. As Plaintiffs see it, Dickey's can avoid any harm from simultaneous litigation "by agreeing to continue the stay of the arbitrations pending a decision by this Court on the fundamental and preliminary issue of whether its Franchise Agreements are valid." *Id.* at 5 n.2.

Defendants agree that "the non-arbitrable Maryland Franchise Law claims fully intertwine with Dickey's arbitrable common law claims." Defs.' Mem. 1. But, they see it as a reason *for* staying litigation: They argue that, for "'judicial economy and avoidance of confusion and possible inconsistent results,'" all proceedings in this Court should be stayed until the arbitrations are completed." *Id.* (quoting *Am. Home Assur.*, 629 F.2d at 964). In Defendants' view, "if the arbitrators rule that the Franchise Agreements and Development Agreement are void pursuant to the Maryland Franchise Law, that issue may not have to be decided by this Court due to the potential preclusive nature of the arbitrators' findings or conclusions." Defs.' Mem. 3. Alternatively, "if the arbitrators reject Plaintiffs' defenses based on the Maryland Franchise Law, Plaintiffs may be bound by the arbitrator's ruling and there would be no proceedings left before this Court." *Id.*

Defendants acknowledge that, "in dicta, the Fourth Circuit questioned whether Plaintiffs would be bound by any rulings in the arbitrations on their Maryland Franchise Law claims." Defs.' Mem. 5 (citing *Chorley Enters. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 566 n.16 (4th Cir. 2015)). Defendants contend that "it is premature for this Court to determine the preclusive effect of any arbitration award here because 'the collateral-estoppel effect of an arbitration proceeding is at issue only after arbitration is completed.'" Defs.' Mem. 7 (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 223 (1985)). Nonetheless, as Defendants see it, both parties would be prejudiced by proceeding with litigation because, if the arbitration concludes first, its outcome *could* preclude this Court's resolution of issues before it, such that "[t]he considerable resources spent by all parties litigating Plaintiff's state law claims in this Court would all be for naught." *Id.* at 6–7.

**Discussion**

Simply put, Plaintiffs would continue with this litigation now because they believe that only this Court can resolve the validity of the Franchise Agreement with finality, and Defendants would stay this litigation because they believe the arbitrator's decision on the validity of the Franchise Agreement may have a preclusive effect, and whether that is the case cannot be determined until after arbitration concludes. I agree that I cannot assess the preclusive effect of arbitration until the arbitrator reaches a decision. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 223 (1985) ("The collateral-estoppel effect of an arbitration proceeding is at issue only after arbitration is completed . . . ."). Indeed, in deciding that the parties had agreed to arbitrate all claims but those under the Maryland Franchise Law, which would remain before this Court, the Fourth Circuit noted the "thorny questions regarding the preclusive effect of a potential award." *Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 566 (4th Cir. 2015). But, that does not mean that the arbitrator's decision *cannot* have a preclusive effect. Moreover, even though the arbitrator's decision may not "*settle* questions of fact pertinent to nonarbitrable claims" because it may not have a preclusive effect, it nonetheless may conserve judicial resources by addressing those questions of fact and providing a well-reasoned analysis that may inform this Court's decision. *See Am. Heart Disease Prevention Found.*, 2007 WL 42714, at *6 (emphasis added).

As for avoiding confusion and inconsistent results, which the Fourth Circuit noted were possible, *id.*, a stay neither remedies nor exacerbates these possibilities. If this litigation is stayed, once the arbitrator reaches a decision, this Court then may not be precluded from addressing the same issues, and may reach the opposite result. Or, the decision could have a preclusive effect and ensure consistency. If this litigation proceeds, the arbitrator's decision

nonetheless may precede this Court's resolution of the claims before it, with the same effect as had litigation been stayed. Thus, consideration of these factors neither militates for nor against a stay. Consequently, given that the outcome of arbitration may preclude resolution of some issues before this Court or at least provide guidance in this Court's independent analysis, "considerations of judicial economy . . . militate in favor of staying the entire action." *See Am. Home Assur.*, 629 F.2d at 964; *Am. Heart Disease Prevention Found.*, 2007 WL 42714, at \*6.

With regard to the time and effort the parties will have to expend and prejudice they may experience under each scenario, I note that the first decision—whether by this Court or the arbitrator—could moot the dispute in the other forum. Thus, if this litigation is not stayed, Dickey's (and Plaintiffs) will have to expend time and money on litigation of issues that arbitration may resolve, while simultaneously expending their resources on arbitration, until either the Court or the arbitrator reaches a final decision. Conversely, if this litigation is stayed, the parties only will have to expend their resources on arbitration, which may preclude, or at least streamline, resolution of some or all issues in this Court. Under these circumstances, the need for a stay outweighs the need to proceed in two fora at once. *See Landis*, 299 U.S. at 254–55; *Elite Const. Team*, 2015 WL 925927, at \*3. Additionally, I note that Plaintiffs no longer have the expense of counsel. *See* ECF Nos. 67–69. Thus, I will exercise my discretion to stay this litigation during the pendency of arbitration. *See Am. Recovery Corp.*, 96 F.3d at 97. The Maryland Franchise Law claims will be stayed.

## **ORDER**

Accordingly, it is this 19th day of February, 2016, hereby ORDERED that the Maryland Franchise Law claims ARE STAYED pending the resolution of the arbitration.

/S/
Paul W. Grimm
United States District Judge

cc: Judge Russell

lyb